UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WENDY M. GOUGH, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| vs. ) | No. 1:14-cv-01823-JMS-TAB |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| *Defendant*. ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Wendy M. Gough applied for disability and disability insurance benefits (collectively, "disability benefits") on March 19, 2012, alleging a disability onset date of August 22, 2011. [Filing No. 13-5 at 2.] Her claim was denied initially and on reconsideration, and a hearing was held before Administrative Law Judge Rosanne M. Dummer (the "ALJ") on April 18, 2013. [Filing No. 13-2 at 38.] On June 28, 2013, the ALJ issued an opinion concluding that Ms. Gough was not disabled as defined by the Social Security Act. [Filing No. 13-2 at 18-32.] The Appeals Council denied her request for review on September 22, 2014, [Filing No. 13-2 at 2], making the ALJ's decision the Commissioner's "final decision" subject to judicial review. Ms. Gough filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

**I.**
**BACKGROUND**

Ms. Gough was forty-four years old at the time she applied for disability benefits, alleging a disability onset date of August 22, 2012. [Filing No. 13-5 at 2.] She has a high school diploma and stopped working in August 2011 after she had a stroke. [Filing No. 13-2 at 43-44.] Ms. Gough

previously worked in various positions, including as a retail department manager, quality auditor, retail markdown, sales clerk, and a warehouse manager. [Filing No. 13-2 at 59-60.] Ms. Gough cites the combined effects of a stroke, left shoulder spurs, bladder problems, anxiety, and thyroid problems in support of her disability and inability to maintain work.[1] [Filing No. 15 at 4.]

Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ ultimately concluded that Ms. Gough is not disabled. [Filing No. 13-2 at 32.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Gough meets the insured status requirements of the Social Security Act and has not engaged in substantial gainful activity since her alleged onset date. [Filing No. 13-2 at 20.]

- At Step Two of the analysis, the ALJ found that Ms. Gough has the following severe impairments: "adjustment disorder with depressed mood; history of alcohol abuse; generalized anxiety disorder; dependent personality disorder; status post 2010-lap band surgery; status post August 2011 cerebrovascular accident, with mild residuals; status post left shoulder arthroscopy in March 2012; obstructive sleep apnea; carpal tunnel syndrome; and obesity." [Filing No. 13-2 at 20.]

- At Step Three of the analysis, the ALJ found that Ms. Gough did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 13-2 at 21.] The ALJ considered various listings in making

---

[1] Both parties provided a detailed description of Ms. Gough's medical history and treatment in their briefs. [Filing No. 15 at 4-13; Filing No. 18 at 2-15.] Because that implicates sensitive and otherwise confidential medical information concerning Ms. Gough, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

- that conclusion, but ultimately found that Mr. Gough did not meet any of them. [Filing No. 13-2 at 21-22.]

- The ALJ concluded that through the date of last insured, Ms. Gough had the residual functional capacity ("RFC") to do as follows:

  > lift/carry about twenty pounds occasionally and ten pounds frequently; sit about six of eight hours; and stand/walk about six of eight hours. She should never climb ladders, ropes, or scaffolds. She can occasionally balance, climb ramps and stairs, stoop, kneel, crouch, and crawl. She should avoid unprotected heights. She should not perform any over the shoulder type of work with the left non-dominant extremity. She can perform frequent (not continuous/repetitive) manipulation bilaterally. Secondary to mental limitations, she is able to complete semi-skilled and unskilled tasks. She would do best in work settings away from intense contact with others, and away from the public and crowds.

  [Filing No. 13-2 at 22 (citations omitted).]

- At Step Four of the analysis, the ALJ concluded that Ms. Gough was unable to perform any of her past relevant work. [Filing No. 13-2 at 30-31.]

- At Step Five of the analysis, the ALJ concluded that considering Ms. Gough's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. [Filing No. 13-2 at 31.] The ALJ relied on testimony from the vocational expert ("VE") to identify jobs that Ms. Gough could perform, and listed five jobs at the unskilled light level (photocopying machine operator, mail clerk, cleaner/housekeeper, small products assembler, and assembler II, light fixture assembling) and one job at the unskilled sedentary level (document preparer/microfilming (digital)) that she could perform. [Filing No. 13-2 at 31-32.]

- Based on these findings, the ALJ concluded that Ms. Gough is not disabled as defined by the Social Security Act and, thus, is not entitled to the requested disability benefits. [Filing No. 13-2 at 32.]

3

Ms. Gough requested that the Appeals Council review the ALJ's decision, but that request was denied on September 22, 2014, making the ALJ's decision the Commissioner's "final decision" subject to judicial review. [Filing No. 13-2 at 2-5.] Ms. Gough filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

## II.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
### DISCUSSION

Ms. Gough raises three issues on appeal that she contends require this Court to reverse the decision of the ALJ denying her request for disability benefits. [Filing No. 15 at 14.] First, Ms. Gough argues that the ALJ failed to build a logical bridge between the evidence and her conclusions because she did not provide a function-by-function assessment of Ms. Gough's carpal tunnel syndrome in developing the RFC and assessing available jobs. [Filing No. 15 at 14.] Second, Ms. Gough contends that the ALJ committed reversible error by failing to address Ms. Gough's limitations in concentration, persistence, or pace in presenting hypothetical questions to the vocational expert, despite having found Ms. Gough to be moderately limited in that area. [Filing No. 15 at 14.] Third, Ms. Gough argues that the ALJ failed to consider the emotional residual deficits Ms. Gough suffers from a prior stroke, which Ms. Gough alleges are exacerbated in certain work environments that the ALJ failed to adequately consider. [Filing No. 15 at 14 (citing SSR 85-15).] Because the Court finds that the ALJ committed reversible error with regard to her failure to account for recognized limitations in Ms. Gough's concentration, persistence, and pace in questioning the VE, the Court will begin with that argument.

### A. Concentration, Persistence, and Pace

Ms. Gough contends that despite the ALJ's recognition that Ms. Gough had functional limitations in concentration, persistence, and pace, the ALJ did not account for these limitations in posing hypothetical questions to the VE. [Filing No. 15 at 21-22.] Ms. Gough cites well-established case law holding that an ALJ must provide the VE with a complete picture of the claimant's RFC, including recognized limitations in concentration, persistence, and pace. [Filing No. 15 at 21-22.]

In response, the Commissioner emphasizes that the ALJ found that with regard to concentration, persistence, or pace, Ms. Gough "has *at most* moderate difficulties." [Filing No. 18 at 20 (original emphasis from Commissioner's brief) (citing Filing No. 13-2 at 22) (no emphasis in ALJ opinion).]  The Commissioner cites evidence that she contends shows that Ms. Gough was recovering well from a stroke and that her mental functional capacity "was not significantly limited in most areas of sustained concentration and persistence."  [Filing No. 18 at 20.]

 "[A] hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record." Young v. Barnhart, 362 F.3d 995, 1003 (7th Cir. 2004).  "It is important for the vocational expert to understand the full extent of the applicant's disability so that the expert does not declare the applicant capable of undertaking work in the national or local economy that the applicant cannot truly perform." Id.  Although the hypothetical need not include every limitation if the expert had the opportunity to learn about the applicant's limitations through independent review of the medical records or questioning at the hearing, there must be "some amount of evidence in the record indicating that the vocational expert knew the extent of the applicant's limitations." Id.  "When the hypothetical question is fundamentally flawed because it is limited to the facts presented in the question and does not include all of the limitations supported by medical evidence in the record, the decision of the ALJ that a claimant can adjust to other work in the economy cannot stand." Id. at 1005.

It is well-established that "the ALJ should refer expressly to limitations in concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do." O'Connor-Spinner v. Astrue, 627 F.3d 614, 620-21 (7th Cir. 2010).

Here, in determining whether Ms. Gough met or medically equaled a listed impairment, the ALJ found that "[w]ith regard to concentration, persistence or pace, the claimant has at most moderate difficulties." [Filing No. 13-2 at 22.] The Commissioner emphasizes the ALJ's use of the words "at most" in characterizing Ms. Gough's limitation as moderate and cites evidence that the Commissioner claims shows that Ms. Gough was not significantly limited in this area. [Filing No. 18 at 20.] The Commissioner ignores, however, that some of the evidence she cites supports the "at most moderate" limitation the ALJ recognized regarding Ms. Gough's concentration, persistence, or pace. [Filing No. 18 at 20 (citing Filing No. 13-15 at 49-50 (mental residual functional capacity assessment concluding that Ms. Gough was "moderately limited" in two of categories pertaining to concentration and persistence)).] Although the Commissioner acknowledges that the ALJ found Ms. Gough to have "at most moderate difficulties" in this area, the Commissioner neither cites where the ALJ incorporated that limitation in her questions to the VE nor argues that the ALJ did not need to do so.[2] Any *post hoc* rationalization and assessment of the evidence violates the well-established *Chenery* doctrine and will not be permitted. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (emphasizing that *Chenery* forbids the Commissioner from defending the ALJ's decision on ground that were not embraced by the ALJ) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)). Thus, the ALJ's failure to incorporate this recognized limitation in the proposed hypotheticals constitutes reversible error in this case.

---

[2] The Court recognizes that there "may be instances where a lapse on the part of the ALJ in framing the hypothetical will not result in a remand." *O'Connor-Spinner*, 627 F.3d at 620. The Commissioner does not argue that this is such a case, however, and the Court finds any argument on that basis to be waived. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument – as [Defendants] have done here – results in waiver."); *see also Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013).

### B.  Other Issues

Because the Court has already found that the ALJ committed reversible error, it will summarily address the other two issues Ms. Gough raises to the extent they could impact the case on remand.

Ms. Gough claims that although the ALJ recognized her carpal tunnel syndrome to be a severe impairment, she failed to consider the impact it would have on Ms. Gough's ability to perform certain jobs, as evidenced by the ALJ's ultimate conclusion that Ms. Gough could perform jobs requiring bilateral gross and fine manipulation.  [Filing No. 15 at 18.]  Ms. Gough cites evidence in the record supporting her diagnosis for severe carpal tunnel syndrome, which she contends is not directly related to the residual deficits of her stroke.  [Filing No. 15 at 18.]

The Commissioner responds that substantial evidence supports the ALJ's determination regarding Ms. Gough's manipulative limitations and that her formulation of an RFC with only minor manipulative limitations was appropriate.  [Filing No. 18 at 16-19.]  The Commissioner acknowledges that Ms. Gough presented medical evidence from a test indicating neuropathy at her wrists, [Filing No. 18 at 16 (citing Filing No. 13-12 at 27-29)], but emphasizes that a consultative examiner found Ms. Gough's hand function to be normal, [Filing No. 18 at 16-17 (citing Filing No. 13-15 at 69 (report of Dr. Andrew Sonderman))].

If an ALJ finds one or more of a claimant's impairments to be severe, he needs to "consider the aggregate effect of the entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).  On remand, the ALJ should be sure to fully detail any functional limitations—or lack thereof—from Ms. Gough's carpal tunnel syndrome.  This is important because, as Ms. Gough emphasizes, the VE testified that if the hypothetical individual considered during questioning was only

9

occasionally able to perform both gross and fine manipulation, none of the identified jobs would be available. [Filing No. 15 at 18 (citing Filing No. 13-2 at 66).]

Ms. Gough also argues that the ALJ failed to consider the emotional residual deficits she claims to suffer as the result of a prior stroke, which she contends are exacerbated in certain work environments. [Filing No. 15 at 14 (citing SSR 85-15).] Ms. Gough details evidence that she contends supports these residual deficits. [Filing No. 15 at 23.] In response, the Commissioner contends that the ALJ sufficiently assessed this evidence and accounted for Ms. Gough's functional limitations by tailoring her RFC to "work settings away from intense contact with others, and away from the public and crowds." [Filing No. 18 at 21 (referencing Filing No. 13-2 at 22).] Because Ms. Gough did not acknowledge those limitations in her RFC in her opening brief or file a reply brief explaining why they are inadequate to account for the functional limitations in the evidence she cites, the Court concludes that she has not shown reversible error on this ground. That said, on remand, the ALJ should take care to account for any functional limitations supported by the evidence of Ms. Gough's conditions, including the effects of stress in the workplace on her emotions. See SSR 85-5 ("Stress and Mental Illness").

## V.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Gough benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

Date: August 17, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF:**

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov